ROSA BORACK v. MOSLER SAFE COMPANY, a Corporation, ERNEST J. WEIS, Doing Business as WEIS & COMPANY, and GEORGE F. KIESEL, ERNEST J. WEIS, Appellant.

Division Two, May 26, 1921.

1. **NEW TRIAL:** Weight of Evidence: Review by Appellate Court. Where the trial court grants plaintiff a new trial on the ground that the verdict for defendant is against the weight of the evidence, the appellate court, on appeal from the order granting a new trial, will not interfere, if the record discloses any substantial evidence in plaintiff's favor.   But if the evidence is such

that a verdict for plaintiff would not be allowed to stand, the order granting a new trial will be reversed, even though such order was bottomed by the trial court on the ground that the verdict was against the weight of the evidence.

2. NEGLIGENCE: Violation of Ordinance: Proximate Cause. It is the general rule in this State that the violation of a city ordinance regulating the running of vehicles over the city streets is negligence *per se* and that one guilty of such violation is liable in damages for all injuries proximately caused thereby.

3. ————: ————: ————: Accident. Where the evidence shows that the death of plaintiff's husband was caused by his being struck by the tongue of a wagon driven by defendant's driver, and that such striking was due to the wheel of the wagon getting caught in the rail of a street-car track in the street, which caused a violent jerk and one of the horses slipped on the wet wooden-block pavement and fell against the tongue of the wagon in such manner as to cause the end of the tongue to strike deceased, who was standing on or near a temporary sidewalk in the street alongside a building in course of erection, and it further appearing from the evidence that horses are liable to slip and fall on a wooden-block pavement at any time and especially when it is wet, and that there is no way to prevent the same, and it further appearing from the evidence that the fact that the driver, in violation of a city ordinance, made a left turn into the street, from an intersecting street, without going "to the right of and beyond the center of the intersecting street before turning" had no tendency to increase the likelihood of the horse slipping and falling and therefore the negligence of the driver in violating the ordinance was not the proximate cause of the injury, but the case was one of mere accident, the trial court erred in not giving the jury a peremptory instruction to find for defendant; and the verdict having been for defendant was for the right party, and the court erred in granting a new trial.

Appeal from St. Louis City Circuit Court.—*Hon. Robert W. Hall*, Judge.

REVERSED AND REMANDED (*with directions*).

*W. H. Douglas* for appellants.

(1) Where "the facts are such that all reasonable men would be likely to draw from them the same infer-

ences, the question of negligence is one of law for the court.'' In this case the only inference that reasonable men could draw from the facts in evidence is that this defendant was not guilty of negligence. Becke v. Railroad Co., 102 Mo. 551; Daneschocky v. Sieble 195 Mo. App. 470. (2) The only issue submitted to the jury by plaintiff in its instruction number one is the failure of the driver of the wagon to obey a city ordinance which provided that ''a vehicle in turning to the left into another street shall pass to the right of and beyond the center of the intersecting street before turning.'' The failure of the defendant to obey this ordinance was not negligence under the facts in evidence in this case, and the court should have sustained defendant's demurrer to the evidence. Ins. Co. v. United Rys. Co., 200 Mo. App. 325; Melville v. Rollwage, L. R. A. 1917B, 133; Fusili v. Ry. Co., 45 Mo. App. 540; Yonkers v. Railroad, 182 Mo. App. 55ᵃ; Dennison v. North Co., 22 Pa. 219; Gittings v. Schenuit, 122 Md. 582; Foster v. Parmlee Co., 179 Ill. App. 21; Canfield v. Trans. Co., 112 N. Y. S. 854; Grimm v. Car Co., 199 Ill. App. 553; Kerbaugh v. Express Co., 58 Pa. 550; Huddy on Automobiles (5 Ed.), p. 232, sec. 269 and note 42, p. 324; secs. 270 and 75, note 65, p. 329; sec. 289, pp. 351, 352. (3) A technical violation of an ordinance at the direction of a police officer does not constitute negligence, especially when the violation of the ordinance was calculated to relieve traffic at a congested street crossing, and when a compliance with the ordinance would have greatly congested the traffic as would have been the result in the present case if the traffic officer had not directed plaintiff to turn without passing to the left and beyond the center of the intersection of the street. See authorities under Point 2, supra; Caudor v. Griffith, 111 N. E. 818; Borg v. Larsen, 111 N. E. 201. (4) The ordinance pleaded by plaintiff was enacted for the purpose of preventing congestion of traffic at busy street crossings, and the evidence in this case shows that the violation of the or-

dinance at the time, and under the circumstances great-
ly relieved traffic instead of congesting it and therefore
its violation did not constitute negligence. See author-
ities under Point 2, supra. (5) The violation of a city
ordinance at the direction of the traffic officer in this
case was not the proximate cause of the death of plain-
tiff's deceased husband, and defendant's demurrer of-
fered at the close of the whole case should have been
sustained. Brewing Assn. v. Talbot, 141 Mo. 583-6;
Stone v. Leritz, 182 Mo. App. 315; Ins. Co. v. Rys. Co.,
200 Mo. App. 317; Foley v. McMahon, 114 Mo. App.
448; Saxon v. Transfer Co., 145 Mo. App. 693; Glenn
v. Ry. Co., 167 Mo. App. 118; Hysell v. Swift & Co., 78
Mo. App. 51; Melville v. Rollwage, 13 N. C. C. A. 1117,
L. R. A. 1917B, 137; Huddy on Automobles, sections
cited under Point 2.

*James T. Roberts,* of counsel, and *Edward W. For-
istel* for respondent.

(1) Trial courts have a wide discretion in granting
new trials, especially where the weight of the evidence
is involved. Bank v. Munson, 177 S. W. 778; Frame
v. Ry. Co., 209 S. W. 314; Rodan v. Transit Co., 207
Mo. 392; Geyer v. St. Joseph, 198 S. W. 78; Gould v.
St. John, 207 Mo. 619; Slicer v. Owens, 241 Mo. 319.
(2) The violation of the city ordinance by the defend-
ant was negligence *per se.* Yonkers v. Railroad, 182
Mo. App. 558; Jennings v. Railroad, 112 Mo. 268; Pet-
ty v. Railroad, 88 Mo. 306; Bluedorn v. Railroad, 108
Mo. 439; Burt v. Nichols, 264 Mo. 15; Propulouris v.
Const. Co., 218 S. W. 792. (3) In the circumstances
here presented, the violation of the ordinance was the
proximate cause of the injury. This in view of the tes-
timony of the witnesses that it was raining, that the
street was paved with blocks of wood and that the rain
on these blocks of wood made it very slick and the horses
were liable to fall. Daneschocky v. Sieble, 195 Mo.
App. 470.

DAVID E. BLAIR, J.—the action is for damages in the sum of $10,000 for death of the husband of respondent, plaintiff below, due to alleged negligence of the defendants. Trial by jury resulted in a verdict for the defendants, Mosler Safe Company and Ernest J. Weis. The trial court sustained a demurrer to the evidence as to defendant George F. Kiesel. The trial court sustained plaintiff's motion for a new trial on two grounds: First, "because the verdict was against the weight of the evidence" and, second, "because the court erred in refusing to give the jury an instruction declaring the law to be that a police officer has no right by an act of his own to violate a valid subsisting city ordinance." Defendant Weis appealed from the order setting aside the verdict and granting a new trial.

*Statement.*

Plaintiff is the widow of Abraham Borack, a blind news vendor, who was killed on or about September 14, 1916, as a result of a blow from the tongue of a dray wagon owned and operated by defendant Weis. Said defendant was engaged in hauling material for a building being erected at the northeast corner of Broadway and Washington Avenue in the City of St. Louis. In the course of this work a fence had been built around the structure between it and the curb and a narrow sidewalk had been constructed alongside the fence for use by the public. Defendant's driver had hauled several loads of material and in unloading the same had caused serious obstruction to traffic, because the stopping of his team and wagon at the proper place for unloading prevented passengers on the street cars from boarding and leaving the same. In the position he had theretofore assumed the team and wagon were on the north side of Washington Avenue with the team to the west. Having noticed the obstruction referred to the traffic officer on duty on that corner directed said driver on his next trip to come in another way, that is, to come south on Broadway and turn toward the east on the north side

of Washington. By coming around in this manner the team and wagon would be stopped far enough to the east of the unloading point to avoid interference with passengers getting on and off the street cars and the movement of such cars on Washington.

In obedience to these instructions and on his next trip the driver drove his team south on Broadway and stopped just north of the north line of Washington until he received a signal from the traffic officer. He testified that he remained there fifteen or twenty minutes waiting for the congestion at that corner to be relieved. Upon receiving a signal from the officer he drove his team and wagon east on Washington, turning in a wide swing to the *left* of the intersection of the two streets, in order to bring his said wagon and team to a position with the left wheels close to the temporary sidewalk on the north side of Washington with the rear of the wagon at the proper place for unloading. In making this turn one wheel of the wagon caught in the rail of the street car track and caused a violent jerk and one of the horses slipped and fell against the tongue of the wagon in such manner as to cause the end of the tongue to strike the deceased who was on or near the temporary sidewalk selling his newspapers. The injury resulted in his death. At that place the pavement was composed of wooden blocks. These were more or less slippery at all times, and particularly so at the time of the accident because it had been raining. At that point the pavement sloped more because of the location there of a drainage sewer. It appears from the evidence that horses are liable to slip and fall on wooden block pavement at any time, and especially when the pavement is wet, and there is no way to prevent the same. All the foregoing facts were shown by plaintiff's witnesses.

An ordinance of the City of St. Louis was introduced by plaintiff which provided that "a vehicle in turning to the left into another street, shall turn to the right of and beyond the center of the intersecting street before turn-

ing.'' The violation of this ordinance and the careless and negligent driving and management of the team by the driver constitute the main charge of negligence in the petition. The petition also alleged that defendant negligently overloaded the wagon in violation of another city ordinance introduced in evidence, so that it was impossible for the horses to pull the same with safety and that this caused the fall of the horses and the resulting injury to the deceased.

The answer was a general denial and plea of negligence on the part of deceased. The reply was a general denial of the new matter alleged in the answer.

Defendant Weis interposed a demurrer to plaintiff's evidence and also a demurrer to all the evidence introduced in the case, both of which were overruled by the court and exceptions saved.

I. The evidence of plaintiff did not disclose any overloading of the wagon, but rather that it was not loaded quite as heavily as usual. The court did not submit the question of the overloading of the wagon to the jury and clearly such charge of negligence was not sustained by any evidence and need not be further considered.

**No Evidence.**

II. If the record discloses any substantial evidence of negligence on the part of defendant's driver in the handling of the team which contributed to the injury of the deceased, this court will not interfere with the action of the trial court in granting a new trial on the ground that the verdict of the jury is against the weight of the evidence. But if the evidence is such that a verdict for plaintiff would not be allowed to stand, the order granting a new trial will be reversed, even though such order was bottomed by the trial court on the ground that the verdict is against the weight of the evidence. This has been so frequently and consistently ruled that citation of authorities is unnecessary.

**New Trial: Weight of Evidence.**

III.   This brings us then to a consideration of the plaintiff's evidence.   The ordinance of the City of St. Louis required vehicles in turning to the left into another street to turn to the right of and beyond the center of the intersecting street before turning.   It is the general rule in this State that the violation of such an ordinance is negligence *per se* and the violator is liable in damages for all injuries proximately caused thereby.

Negligence Per Se:
Violation of Ordi-
nance: Proximate
Cause.

[Brannock v. Elmore, 114 Mo. 55; Schlereth v. Mo. Pac. Ry. Co., 96 Mo. 509.]

Assuming for the purpose of the case, but without so deciding, that the defendant's driver under the circumstances here shown was guilty of negligence *per se* in driving to the left of the intersection of the streets, as claimed by plaintiff, yet defendant would not be liable for the death of plaintiff's decedent, unless such negligence was the proximate cause of his death.   Even though defendant's driver was negligent in driving to the left in violation of the ordinance, defendant cannot be required to respond in damages if the injury to deceased was caused by an occurrence over which the driver had no control and which he could not reasonably have foreseen as the result of such negligence.   This is the rule laid down in Daneschocky v. Sieble, 195 Mo. App. 470, cited by respondent, and it is undoubtedly the general rule.

Taken by itself, the sudden jerk of the wagon and slipping of a horse and fall of the horse against the wagon tongue, causing it to strike and injure deceased, could be nothing more than an accident.   Plaintiff's evidence shows the driver was experienced in his work; that he did not make a sharp turn, but on the contrary made a wide turn.   No jerking of the team or any act of the driver tending to cause the horse to fall is shown. The plaintiff's evidence further shows that there is no way to prevent horses from falling on wooden block pavement, either wet or dry.

It is clear the turning to the left of the intersection of the streets had no tendency to increase the likelihood of a horse slipping and falling. Such·accidents are as frequent in one place in the street as another. If the turn had been made to the right of the intersection and in making such turn the same thing had occurred, we would not hesitate to characterize it as a mere accident. The turn to the left was probably no sharper than if it had been made to the right of the intersection, for in turning into the north side of Washington the driver would start to turn sooner. That would be all the difference. The driver could not have been expected to anticipate the fall of the horse as· a result of such turn. The occurrence was a mere accident not reasonably to have been foreseen as a result of his alleged negligence.

A good illustration of results that might, and reasonably would, occur from a violation of an ordinance of this sort would be where a vehicle coming westbound along the north side of Washington Avenue would collide with the team headed eastward on the wrong side of the street. If a collision of that sort had occurred, with or without negligence on the part of the driver of such other vehicle and knockd down defendant's horse and caused the injury to deceased, the result could be said to have been one the driver of defendant's team could reasonably have anticipated and naturally resulted from his violation of the ordinance. The accident here did not come within the class of accidents that reasonably resulted from the violation of the ordinance.

It therefore appears from the evidence of plaintiff and as a matter of law that the negligence of defendant's driver was not the proximate cause of the injury to plaintiff's decedent, and the trial court should have sustained defendant's demurrer at the close of plaintiff's case, and as defendant's evidence did not in anywise tend to strengthen plaintiff's case, the court again erred in refusing to give a peremptory instruction for defendant at the close of all the evidence. Since there

was no evidence of negligence of defendant that was the proximate cause of the death of plaintiff's husband, there was no reason for the trial court to set aside the verdict of the jury as being against the weight of the evidence.

This being our view of the evidence, there is no necessity of discussing the proposition of law involved in the refusal of plaintiff's instruction. The verdict of the jury was for the right party.

It therefore follows that the order granting a new trial should be reversed and the cause remanded with instructions to the trial court to reinstate the verdict of the jury and reenter judgment thereon in favor of defendant Weis.

All concur.