W. H. Bean, Respondent, v. City of Moberly, Missouri, a Municipal Corporation, Appellant.—No. 38291.—169 S. W. (2d) 393.

Division Two, March 25, 1943.

A. R. Marshall and Hunter & Chamier for appellant.

*C. M. Hulen* for respondent.

978

BARRETT, C.—As a W. P. A. sponsored project the City of Moberly resurfaced and improved certain streets. In improving the drainage of a viaduct and relaying the sewer line a ditch was dug in the parkway between the sidewalk and curb line of Rollins Street. On May 13, 1941, W. H. Bean fell in this ditch and for his injuries recovered a judgment of $7,666.00 against the City of Moberly. On this appeal the city tacitly concedes that Bean's evidence justified a finding that the city had breached its common law duty to ▮▮▮ exercise due care in the maintenance of its ways and was, therefore, negligent, but argues that its demurrers should have been sustained because the evidence also demonstrated that he was guilty of contributory negligence as a matter of law.

The ditch intersected the driveway to the Tedford home and it was at this point Bean fell. There were barricades or piles of dirt both north and south of the ditch. There were "bomb lights" at the edge of the street where dirt was piled and a light on either side of the entrance to the drive, but at the east end of the ditch, where it intersected the driveway, there were no lights or barricades according to the jury's finding. Bean and his wife were visiting his brother-in-law. The driveway was the vehicular entrance to his home. When the Beans first called they parked their car in the driveway back of the brother-in-law's car. Later Bean backed his car out of the drive while his brother-in-law drove his car out. They both went to the business district on an errand. When they came back Ray stopped his car in the drive and let Bean out. He then observed that his car obstructed the sidewalk and backed it up so that it occupied the space in the driveway next to the parkway and alongside the east

end of the unprotected and unguarded ditch. About 8:45 o'clock the Rays and Beans started to the second picture show. The men walked ahead to the Ray car; Hubert Ray went around to the east side of the car and Bean to the west side. As Bean was about to get in the car, but before he attempted to open the car door, he fell from the parkway into the ditch and was injured.

The city contends that Bean knew the parkway was torn up, repair work in progress and that the street was in a defective and dangerous condition, and, therefore, his fall was caused by his own failure to use his faculties and exercise due care to discover and avoid the obviously open, unguarded ditch and failing to do so was guilty of such conduct that the court should have declared him guilty of contributory negligence as a matter of law. In support of its position the city relies upon instances of a motorist proceeding to drive over and across streets knowing and seeing they were then being repaired or of a pedestrian using a walkway while it was in process of construction. In such instances, "when one traveling along a public street sees, or otherwise receives actual notice, that such street is out of repair or torn up, he must look for obstructions and other dangers and avoid them if he can do so by exercising ordinary care," (Welch v. McGowan, 262 Mo. 709, 719, 172 S. W. 18, 20) and when the evidence shows that one with such knowledge does not use his faculties but proceeds on, heedless of obvious danger and the consequences, he does not exercise due care for his own safety and, therefore, cannot recover. Baranovic v. Moreno Co., 342 Mo. 322, 114 S. W. (2d) 1043; Waldmann v. Skrainka Const. Co., 289 Mo. 622, 233 S. W. 242; Wheat v. St. Louis, 179 Mo. 572, 78 S. W. 790; Eisele v. Kansas City (Mo. App.), 237 S. W. 873. Furthermore, a traveler in such a situation and with such knowledge may not assume that the city has performed its duty with respect to the streets but since he knows of the condition is not entitled to warning but must exercise his faculties in a manner commensurate with his knowledge of the surroundings. Waldmann v. Skrainka Const. Co., supra; Craine v. Metropolitan Street Ry. Co., 246 Mo. 393, 152 S. W. 24; Rohmann v. City of Richmond Heights (Mo. App.), 135 S. W. (2d) 378.

Bean had often visited his brother-in-law and knew that a sewer ditch was being dug. He was unable to explain his fall or to say how or why it happened. Though he had seen the men working, their material in and near the work, the barricades and piles of dirt, he had never "looked over the ditch." As he drove into the driveway he saw at least one of the "bomb lights" in the street, as it was necessary for him to drive around it to enter the drive. He repeatedly stated that he knew a ditch was being dug but "didn't know whether it came up to the parking" or driveway. When he was about to enter the car it was dark and there were no lights, barricades

or piles of dirt and he "didn't know there was a ditch there." The city contends this evidence, together with the facts of the occurrence, conclusively demonstrates that he had knowledge of the nature of the improvement and of the danger incident to the use of the premises and further that he did not use his faculties or exercise ordinary care for his own safety.

The city had a right to repair the street, but the fact that it was being repaired did not preclude Bean's use of it provided he used ordinary care to avoid injury from known or obvious defects or dangers. The fact that he possessed some ▬▬▬ knowledge that repairs were in progress but did not know their extent and had no notice of the proximity of the ditch to the driveway when there were no lights or barricades at that point was a circumstance for the jury to consider in determining whether or not he had proceeded with the required degree of caution for his own safety in view of his present surroundings and his past observations. Smith v. St. Joseph, 45 Mo. 449; Cohn v. City of Kansas, 108 Mo. 387, 18 S. W. 973. Bean testified positively that he did not know the ditch extended up to the driveway. There were no lights or barricades to warn him and the driveway was in use. Under the facts and circumstances it cannot be said that he had such actual knowledge as the rule preventing recovery contemplates, but whether he was contributorily negligent so as to bar his recovery was for the jury to say. Williamson v. Mullins (Mo. App.), 180 S. W. 395; Kelly v. Walsh, 177 Mo. App. 318, 164 S. W. 135; King v. De Soto (Mo. App.), 89 S. W. (2d) 579. While he had some knowledge he disclaimed awareness of the defect or danger causing his injury and it cannot be said that the surroundings were so obviously dangerous, even in view of what he did know, that a reasonably prudent person would not have proceeded as he did. Cordray v. City of Brookfield, 334 Mo. 249, 65 S. W. (2d) 938; Neagle v. City of Edina (Mo. App.), 53 S. W. (2d) 1077.

So it was with Bean's assuming he could use the driveway with safety. He knew of the sewer ditch but he did not know it came up to the driveway and there were no warning signals. Under the circumstances he was entitled to assume the way was safe. That assumption, his prior knowledge and all the surrounding circumstances were to be taken into consideration by the jury in determining whether or not he was entitled to recover. Perrette v. Kansas City, 162 Mo. 238, 62 S. W. 448; Heberling v. City of Warrensburg, 204 Mo. 604, 103 S. W. 36; Cassaday v. Kansas City, 119 Mo. App. 116, 95 S. W. 948; Knight v. Kansas City, 138 Mo. App. 153, 119 S. W. 990; Elliott v. Kansas City, 198 Mo. 593, 96 S. W. 1023. Compare: O'Neill v. St. Louis, 292 Mo. 656, 239 S. W. 94, where the plaintiff admitted previous knowledge of the defect complained of and in connection with whether she was contributorily negligent it was held she was not entitled, in view of her actual knowledge, to assume the walk was

safe. It it usually in that connection the question arises. Baranovic v. Moreno Co., supra; Rohmann v. City of Richmond Heights, supra; Sheffer v. Schmidt, 324 Mo. 1042, 26 S. W. (2d) 592.

· The city also contends that the plaintiff's petition does not state a cause of action and that the court committed error by giving instruction number one and in admitting in evidence portions of a city ordinance relating to the protection and use of streets and sidewalks. The factual background of the city's argument is this: The plaintiff's petition set forth the facts and circumstances of his accident and plead that the city dug the ditch which it permitted to remain open and unguarded. He then specifically plead and set forth that portion of the ordinance relating to the protection and use of streets and sidewalks which requires every person making an excavation in or near a street, sidewalk or driveway to enclose it with barriers not less than three feet high and to place red lights at each end of the excavation in such a manner as to light the excavation from sunset to sunrise. The plaintiff offered and the court received the ordinance in evidence and then instructed the jury that if they found the ordinance in force and the facts hypothesized in the instruction and as required by the ordinance, then their verdict should be for the plaintiff. The city says the ordinance was a legislative enactment, a police regulation for the guidance of the conduct of the citizen and not for the city's guidance, that the city incurred no liability for failing to observe or enforce its own ordinance and for that reason it was not admissible in evidence, the city's liability could not be predicated on its breach and, therefore, the petition did not state a cause of action and the instruction based on it was erroneously given. The plaintiff admits that his cause of action is based in part upon the city's failure to observe the ordinance but contends that the city was acting in its corporate or ministerial capacity and was subject to the same rules of tort liability as are imposed upon the general public and, therefore, its violation of the ordinance was negligence per se and a proper foundation of liability.

Since the plaintiff's petition alleges that the city maintained an open, unguarded ditch it states a cause of action for common law negligence irrespective of the allegations with reference to the ordinance. Perrigo v. City of St. Louis, 185 Mo. 274, 84 S. W. 30; Mehan v. City of St. Louis, 217 Mo. 35, 116 S. W. 514. But, even though the city acted in its corporate, ministerial capacity in digging the ditch (Donahoe v. Kansas City, 136 Mo. 657, 38 S. W. 571) its liability is for negligence. Wheat v. St. Louis, 179 Mo. 572, 78 S. W. 790; 38 Am. Jur., Sec. 586; 6 McQuillin, Municipal Corporations, Sec. 2786; 43 C. J., Secs. 1700, 1731; 19 R. C. L., Sec. 391. The city's obligation is to maintain its streets and sidewalks in a reasonably safe condition and if it does not do so it may be guilty of having breached its common law legal duty to some mem-

ber of the public and, therefore, negligent. Whether the city has exercised reasonable care in the construction and maintenance of its corporate enterprises is the test and measure of its legal duty and liability. Myers v. Kansas City, 108 Mo. 480, 18 S. W. 914; Perrigo v. St. Louis, supra; Lindman v. Kansas City, 308 Mo. 161, 271 S. W. 516; King v. City of De Soto, supra.

On the other hand, municipalities are not liable for a breach of duty with respect to their governmental functions (38 Am. Jur., Sec. 572; Richardson v. Hannibal, 330 Mo. 398, 50 S. W. (2d) 648, 84 A. L. R. 508) and the enactment and enforcement of ordinances is a governmental function. 6 McQuillin, Municipal Corporations, Sec. 2802; 38 Am. Jur., Secs. 602-604. Consequently, it has become definitely settled that a city is not civilly liable for failure to enforce its ordinances. Kiley v. The City of Kansas, 87 Mo. 103; Harman v. St. Louis, 137 Mo. 494, 38 S. W. 1102; Sallee v. City of St. Louis, 152 Mo. 615, 54 S. W. 463; Salmon v. Kansas City, 241 Mo. 14, 145 S. W. 16. By the same reasoning tort liability cannot be imposed on a municipality for failure to observe the requirements of its own ordinances (4 Dillon, Municipal Corporations, Sec. 1629) even though the ordinances may become the standard of care and the measure of liability so far as the conduct of members of the general public are concerned. Borack v. Mosler Safe Co., 288 Mo. 83, 231 S. W. 623; Murray v. Missouri Pacific Ry. Co., 101 Mo. 236, 13 S. W. 817; Robison v. Kansas City (Mo.), 181 S. W. 1004; Hirst v. Ringen Real Estate Co., 169 Mo. 194, 69 S. W. 368.

We have not discovered a case in which it was specifically sought to impose liability on a municipality for failure to observe its own ordinances in the manner attempted here and under similar circumstances but Mehan v. St. Louis, 217 Mo. 35, 116 S. W. 514, and Sallee v. City of St. Louis, 152 Mo. 615, 54 S. W. 463, indicate the applicable principle. In the Mehan case piles of lumber were left in an alley adjacent to a fire station. A boy walking through the alley stepped on a nail in one of the boards and was injured. One of his assignments of negligence as to the city was that the boards and nails were permitted in the alley in violation of an ordinance. The plaintiff offered the ordinance in evidence in support of his allegation and for the purpose of proving that the city was negligent. It was held that the ordinance was properly excluded for that purpose because a city was not liable for injuries to private persons resulting from a failure to enforce its police regulations. In the Sallee case it was claimed that the city suffered a dead horse to remain in the street and as Sallee drove his buggy over the dead animal his horse became frightened and ran away. The court received in evidence an ordinance requiring the removal of dead animals. Among other things the ordinance provided that dead animals could not be removed by private

individuals but had to be removed by the city's contractor employed for that purpose. The court said, 152 Mo. l. c. 622: "If the city was not otherwise liable to the plaintiff for the injuries complained of, the ordinance did not make it so. A municipal corporation cannot be held liable in a civil suit for failure to enforce an enactment of its own, made in its legislative capacity, having reference to the exercise of its police powers. . . . But this ordinance only tended to show that the city had undertaken to do that which it was bound under the law to do. The fact that the ordinance prohibited anyone except the contractor to interfere in the matter, neither added to nor took from the character of the city's obligation. The law makes it the absolute duty of the city to remove the nuisance within a reasonable time, and holds it liable for damage resulting from neglect of that duty. Therefore, the admission of the ordinance in evidence was not only irrelevant, but absolutely immaterial and could not possibly have ▮▮▮▮ prejudiced the defense." Because liability on the part of the city could not be predicated on its failure to observe its own legislative mandate it was error for the court to hypothesize its liability on a violation of the ordinance. Ryan v. Kansas City, 232 Mo. 471, 134 S. W. 566, 134 S. W. 985; Loth v. Columbia Theatre Co., 197 Mo. 328, 94 S. W. 847.

The cases upon which the plaintiff relies do not announce a contrary principle. In most of his cited cases a violation of a city ordinance was relied on for the purpose of imposing liability on an individual and not the city. Borack v. Mosler Safe Co., supra; Murray v. Missouri Pac. Ry. Co., supra; Wendler v. People's House Furnishing Co., 165 Mo. 527, 65 S. W. 737; McKee v. Peters, 142 Mo. App. 286, 126 S. W. 255. In Perrigo v. St. Louis, supra, and Salmon v. Kansas City, supra, it is specifically pointed out that the city's liability was for knowingly permitting the existence of a dangerous condition and not for the violation of its own ordinance. While some of the language in Robison v. Kansas City, supra, may indicate that the city is under a legal duty to observe its own legislative enactments and that a failure to do so may constitute a breach of duty, an examination of the files in that case discloses that the city's liability was predicated on a failure to keep its streets in a reasonably safe condition and not upon a violation of the ordinance. So it was with Lindman v. Kansas City, 308 Mo. 161, 271 S. W. 516, the plaintiff's theory of the city's liability was that it violated its nondelegable duty to maintain its streets in a reasonably safe condition and liability was specifically hypothesized upon a finding of its knowingly permitting the sidewalk to be obstructed in such a manner as to compel pedestrians to walk in the street. Its companion cases point out that the city was not liable for failure to enforce or obey its ordinances but for negligence in failing to keep its streets reasonably safe, although its codefendants were liable because they had failed to observe and comply with

984

the requirements of the city's ordinances. See and compare: Strother v. Kansas City, 316 Mo. 1067, 296 S. W. 795; Shafir v. Carroll et al., 309 Mo. 458, 274 S. W. 755; Shafir v. Sieben (Mo.), 233 S. W. 419.

This is not to say that the ordinance is not admissible in evidence in any event and under all circumstances. There is no difference in an ordinance as evidence and other evidence. If it is relevant and material or tends to prove any issue in the case it should be and is receivable in evidence for that purpose. For example, the ordinance was competent in the Sallee case as bearing on the issue of whether the city had removed the dead horse within a reasonable time after notice of its presence. An ordinance may in and of itself tend to show or charge the city with notice of certain facts. Perrigo v. St. Louis, supra; Myers v. Kansas City, 108 Mo. 480, 18 S. W. 914. No hard and fast rule can or need be attempted, suffice it to say that in the present case it is not admissible as the measure of the city's standard of conduct and, therefore, of its substantive liability. 2 Wigmore, Evidence, Sec. 461, pp. 488, 500; Mehan v. City of St. Louis, supra; Salmon v. Kansas City, supra.

It was not error for the court to refuse the city's instruction A with reference to Bean's proceeding to use the driveway with knowledge of its defective condition because that matter was fully covered by given instruction seven. But upon a retrial of the case the facts hypothesized in instruction C should either be included in instruction seven or in a separate instruction, as the city is entitled to have so much of its theory of contributory negligence submitted to the jury as the evidence warrants. Cordray v. City of Brookfield, supra.

Because of the noted errors the judgment is reversed and the cause remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.